# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |  |
|---|---|---|
| WHITE STALLION ENERGY CENTER, LLC, | ) ) ) | |
| Petitioner, | ) ) | Case No. 12-1100 |
| v. | ) | (and consolidated cases) |
| | ) ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) | |
| Respondent. | ) ) ) | |

## PROPOSED STATE INTERVENORS-RESPONDENT'S RESPONSE TO JOINT MOTION OF NEW-UNIT DEVELOPERS TO SEVER AND EXPEDITE CERTAIN ISSUES

The Commonwealth of Massachusetts and the States of Connecticut, Delaware, Illinois, Iowa, Maine, Maryland, Minnesota, New Hampshire, New Mexico, New York, North Carolina, Oregon, Rhode Island, Vermont and the District of Columbia, the Cities of Baltimore and New York, and Erie County, New York (collectively, "Proposed State Intervenors-Respondent") oppose the "Joint Motion by Developers of New Solid-Fueled Electric Generating Units to Sever and Expedite Consideration of Issues Germane to Hazardous Air Pollutant Standards Applicable to New Units," dated April 27, 2012 (Document #1371309)[1] ("Mot."), as clarified on May 1, 2012 (Document #1371642) and as clarified and

---

[1] Document numbers referred to herein are within the Docket for the lead case, *White Stallion, LLC v. EPA*, No. 12-1100.

modified on May 9, 2012 (Document #1373043) ("Notice"), collectively "Motion." Proposed State Intervenors-Respondent concur with the grounds set forth in Respondent EPA's opposition and oppose the Motion on additional grounds, as follows:

The Motion filed by New-Unit Developers ("Movants") hinges on their argument that, due to "EPA's new-unit MATS rule standards," they are unable to commence construction of their respective new-units before mid-April 2013, when other regulatory requirements are proposed to take effect (Mot. at 4), which they contend means they "will be forced out of business" (Mot. at 10). Ostensibly to avert such alleged "irreparable harm," they seek an order to "sever [a subset of] new-unit issues from the main body of issues in the case for purposes of expedited briefing." Mot. at 3; Notice at 5-6.

As an initial matter, Movants' so-called "irreparable harm" is not legally cognizable injury here, at all. Separate and apart from EPA's action and authority in promulgating the Mercury Air Toxics Standards ("MATS") rule, EPA proposed New Source Performance Standards ("NSPS") under 42 U.S.C. § 7411(b) that would apply to electric generating units ("EGUs") constructed after April 12, 2013. *See* Standards of Performance for Greenhouse Gas Emissions for New Stationary Sources: Electric Utility Generating Units, Proposed Rule, 77 Fed. Reg. 22392/2 (Apr. 13, 2012). Movants' attempt to establish "irreparable harm" based on this

2

*proposed* rule that is still subject to change, neither flows from the MATS rule itself, nor is a cognizable injury. Further, the facts that Movants have a short window of opportunity in which to act to avoid these new greenhouse gas requirements, if EPA finalizes them as proposed, or that their present business plans are viable only if they can avoid such requirements, do not constitute "irreparable harm"; these facts simply reflect the need to make standard business decisions involved in operating in a regulated industry.

Aside from the fact that Movants have alleged no cognizable injury due to the MATS rule, let alone "irreparable harm," the logic underlying Movants' Motion also is faulty. Movants' approach assumes that after the conclusion of expedited proceedings, the alleged obstacles to commencing construction by mid-April 2013 will be gone, and they will therefore be in a position to go forward with their projects. But that assumption of redressability through expedited proceedings is not well founded.

In a case such as this one, where the rule being challenged promotes substantial benefits to public health and welfare, and the challenge is not to the agency's fundamental authority to regulate, but rather to the particular form of, or methodology used to develop, the regulations, then, if the rule is found to be deficient, on balance, remand without vacatur is appropriate. *See e.g., Heartland Regional Medical Center v. Sebelius*, 566 F.3d 193, 197 (D.C. Cir. 2009) (a factor

weighing towards remand without vacatur is whether deficiencies of an invalidated rule are likely to be curable) *citing Allied-Signal, Inc. v. United States Nuclear Regulatory Commission*, 988 F.2d 146 (D.C.Cir.1993). Further, remand without vacatur is appropriate where vacatur "would at least temporarily defeat . . . the enhanced protection of the environmental values covered by [the EPA rule at issue]." *North Carolina v. EPA*, 550 F.3d 1176, 1178 (D.C. Cir. 2008) (citation omitted). Here, vacatur of new-unit standards after expedited review would defeat the protections of public health intended by MATS by allowing yet-to-be-constructed EGUs to avoid such protections, throughout their life spans, despite curability of defects, if any, which Proposed State Intervenors-Respondent strongly contend there are none.

Moreover, as Movants concede, the relief sought will not even resolve all issues that Movants intend to raise related to new-unit standards. Notice at 5 (stating that the subcategorization issue in Part IIC of the Motion "should not be severed" and "withdraw[ing] their request for expedited briefing, argument and resolution of this issue"). As long as any new-unit issues remain live and pending post-expedited processes, Movants' position regarding deciding whether to commence construction by April 2013 will remain unimproved. The expedited processes would thus add burdensome, inefficient and duplicative efforts for both

4

the Court and the parties, yet not even resolve all of the new-unit issues Movants and other Petitioners intend to raise.

In addition, the two issues Movants seek to sever and expedite – achievability in practice and EPA's pollutant-by-pollutant approach – are not unique or discrete to new-units. Rather, other Petitioners will raise shades of these same substantive issues in the context of existing-unit standards. In addition to the possibility of biasing review by improperly narrowing the context of review in the first instance, Movants' proposed bifurcation of similar and overlapping issues would generate duplicative briefing and argument, spurring inefficiency and wasting judicial and other parties' limited resources.

Finally, Proposed State Intervenors-Respondent object to Movants' proposed briefing schedule and format to the extent it provides Intervenors-Respondent only seven days after Respondent's brief is due to file a brief of 3,500 words. Mot., Exh. A. Even with exceptional diligence, seven days is an unworkably short time frame in which to tailor Proposed State Intervenors-Respondent's brief to avoid duplication of arguments and other content with Respondent's brief, and to undergo necessary review and approval processes within upper level managements of the multiple State and other governmental entities expected to join our brief. Indeed, the Court's standard practice allows for intervenors to file a brief of up to 8,750 words within 15 days after the

respondent's brief is filed.  Handbook of Practice and Internal Procedures ("Handbook"), at 39.  Further, in consolidated cases involving multiple parties, such as this one, it is not unusual for the Court to provide longer time to file and/or more words, proportional to the allocations to other parties.  At the same time, contrary to their position regarding expediting the schedule, Movants would allocate to themselves a *longer* time frame for their reply brief (21 days) than the Court's standard practice (14 days).  *See* Mot., Exh. A; Handbook, at 39.

In summary, given that Movants' claims of irreparable harm and redressability through expedited hearing are so dubious, the added complexity, burden and potential unfairness to other parties of following the proposed path does not satisfy the high bar set by the Court for granting expedited consideration.  *See* Handbook, at 33 (stating the Court "grants expedited consideration very rarely").

For the foregoing reasons, and those set out in EPA's opposition with which we concur, the Court should deny the Motion.

Respectfully submitted,

FOR THE COMMONWEALTH OF MASSACHUSETTS

MARTHA COAKLEY
ATTORNEY GENERAL

By:
/s/ Carol Iancu
Carol Iancu
Tracy Triplett
William L. Pardee, Chief
Assistant Attorneys General
Environmental Protection Division
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 963-2428
carol.iancu@state.ma.us

| FOR THE STATE OF CONNECTICUT<br>GEORGE JEPSEN<br>ATTORNEY GENERAL | FOR THE STATE OF DELAWARE<br>JOSEPH R. BIDEN, III<br>ATTORNEY GENERAL |
|---|---|
| Kimberly P. Massicotte<br>Matthew I. Levine<br>Assistant Attorneys General<br>55 Elm Street<br>P.O. Box 120<br>Hartford, CT 06106<br>(860) 808-5250 | Valerie M. Satterfield<br>Deputy Attorney General<br>Delaware Department of Justice<br>102 West Water Street, 3rd Floor<br>Dover, DE 19904<br>(302) 739-4636 |

FOR THE STATE OF ILLINOIS
LISA MADIGAN
ATTORNEY GENERAL

Matthew J. Dunn
Gerald T. Karr
James P. Gignac
Assistant Attorneys General
69 W. Washington St., 18th Floor
Chicago, Illinois 60602
 (312) 814-0660

FOR THE STATE OF IOWA
THOMAS J. MILLER
ATTORNEY GENERAL

David R. Sheridan
Assistant Attorney General
Environmental Law Division
Lucas State Office Building
321 E. 12th Street, Ground Flr.
Des Moines, IA 50319
(515) 281-5351

FOR THE STATE OF MAINE
WILLIAM J. SCHNEIDER
ATTORNEY GENERAL

Gerald D. Reid
Assistant Attorney General
Chief, Natural Resources Division
6 State House Station
Augusta, ME 04333-0006
(207) 626-8545

FOR THE STATE OF MARYLAND
DOUGLAS F. GANSLER
ATTORNEY GENERAL

Roberta R. James
Assistant Attorney General
Office of the Attorney General
Maryland Department of the Environment
1800 Washington Boulevard, Suite 6048
Baltimore, MD 21230
(410) 537-3748

FOR THE STATE OF MINNESOTA
BY ITS COMMISSIONER OF THE
MINNESOTA POLLUTION
CONTROL AGENCY

LORI SWANSON
ATTORNEY GENERAL

Beverly M. Conerton
Assistant Attorney General
Karen D. Olson
Deputy Attorney General
445 Minnesota Street, Suite 900
St. Paul, Minnesota 55101-2127
(951) 757-1426
Karen.Olson@ag.state.mn.us

FOR THE STATE OF NEW
HAMPSHIRE
MICHAEL A. DELANEY
ATTORNEY GENERAL

K. Allen Brooks
Senior Assistant Attorney General
33 Capitol Street
Concord, NH 03301
(603) 271-3679

FOR THE STATE OF NEW MEXICO
GARY K. KING
ATTORNEY GENERAL

Stephen R. Farris
Ann Moore
Tannis L. Fox
Assistant Attorneys General
Water, Environment and Utilities
Division
Office of the New Mexico Attorney
General
P.O. Box 1508
Santa Fe, New Mexico 87504
(505) 827-6695

FOR THE STATE OF NORTH
CAROLINA
ROY COOPER
ATTORNEY GENERAL

James C. Gulick
Senior Deputy Attorney General
J. Allen Jernigan
Special Deputy Attorney General
Amy L. Bircher
Assistant Attorney General
Marc Bernstein
Special Deputy Attorney General
North Carolina Department of Justice
P.O. Box 629
Raleigh, North Carolina 27602-0629
(919) 716-6600

FOR THE STATE OF NEW YORK
ERIC T. SCHNEIDERMAN
ATTORNEY GENERAL

Barbara D. Underwood
Solicitor General
Andrea Oser
Deputy Solicitor General
Michael J. Myers
Kevin P. Donovan
Assistant Attorneys General
Environmental Protection Bureau
The Capitol
Albany, NY 12224
(518) 402-2594

FOR THE STATE OF OREGON
JOHN KROGER
ATTORNEY GENERAL

Paul Logan
Assistant Attorney-in-Charge
Natural Resources Section
Oregon Department of Justice
1515 SW Fifth Avenue, Suite 410
Portland, OR 97201
(971) 673-1943

FOR THE STATE OF
RHODE ISLAND
PETER F. KILMARTIN
ATTORNEY GENERAL

Gregory S. Schultz
Special Assistant Attorney General
Rhode Island Dept. of Attorney
General
150 South Main Street
Providence, RI 02903
(401) 274-4400 x 2400

FOR THE STATE OF VERMONT
WILLIAM H. SORRELL
ATTORNEY GENERAL

Thea J. Schwartz
Assistant Attorney General
State of Vermont
Office of the Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 828-3186

| | |
|---|---|
| FOR THE DISTRICT OF COLUMBIA<br>IRVIN B. NATHAN<br>ATTORNEY GENERAL<br><br>Amy E. McDonnell<br>Deputy General Counsel<br>Kimberly Katzenbarger<br>General Counsel<br>Office of the Attorney General<br>District Department of the Environment<br>1200 First Street, NE, Seventh Floor<br>Washington, DC 20002<br>(202) 535-2608 | FOR THE CITY OF BALTIMORE<br>GEORGE A. NILSON<br>CITY SOLICITOR<br><br>William R. Phelan, Jr.<br>Chief Solicitor<br>Dawn S. Lettman<br>Assistant Solicitor<br>Baltimore City Department of Law<br>100 Holliday Street<br>Baltimore, Maryland 21202<br>410-396-4094; 410-396-3948<br>Counsel for the Mayor and City Council of Baltimore<br>William.phelan@baltimorecity.gov |
| FOR THE CITY OF NEW YORK<br>MICHAEL A. CARDOZO<br>CORPORATION COUNSEL<br><br>Christopher King<br>Carrie Noteboom<br>Assistant Corporation Counsels<br>100 Church Street<br>New York, New York 10007<br>(212) 788-0771 | FOR THE COUNTY OF ERIE, NEW YORK<br>MICHAEL A. SIRAGUSA<br>ERIE COUNTY ATTORNEY<br><br>Jeremy Toth<br>Second County Attorney<br>Erie County Department of Law<br>95 Franklin Street, Room 1634 Buffalo, New York 14202<br>(716) 858-2208<br>Jeremy.Toth@erie.gov |

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document filed through the Court's CM/ECF System has been served electronically on all registered participants of the CM/ECF System as identified in the Notice of Docket Activity, and that paper copies will be sent by first class mail, postage prepaid, to those indicated as non-registered participants who have not consented in writing to electronic service, on May 17, 2012.

            /s/ Carol Iancu
            Carol Iancu