ARGUED DECEMBER 10, 2013
DECIDED APRIL 15, 2014

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

| | | |
|---|---|---|
| WHITE STALLION ENERGY CENTER, LLC, et al., | ) ) ) ) | |
| Petitioners, | ) | Case No. 12-1100, and consolidated cases |
| v. | ) ) ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) | |
| Respondent. | ) ) | |

_____

## RESPONSE OF INDUSTRY RESPONDENT INTERVENORS IN OPPOSITION TO TRI-STATE GENERATION AND TRANSMISSION ASSOCIATION, INC.'S EMERGENCY MOTION

Industry Respondent Intervenors [1] oppose Tri-State Generation and

Transmission Association, Inc.'s ("Tri-State") "emergency motion" under D.C. Cir.

Rule 27(f). Tri-State seeks a suspension of its obligation to comply with the

hydrochloric acid emission limitations in the Mercury and Air Toxics Standards

("MATS") at its Nucla Station by April 16, 2016.

_____

[1] Industry Respondent Intervenors are Calpine Corporation, Exelon Corporation, National Grid Generation LLC, and Public Service Enterprise Group, Inc.

The Court should deny the motion because there is no "emergency," and because movant has failed to allege specific facts to satisfy the criteria for a stay of a rule. Close examination reveals that both the "emergency" and the "irreparable harm" claimed by Tri-State are merely the product of the disingenuously abridged menu of available options that Tri-State has presented to this Court. Tri-State has thus far failed to avail itself of these other options to avoid "harm." Tri-State's selectivity in its disclosures highlights another challenge for the Court: the absence of a thoroughly developed factual record on which the Court could base the relief sought.

More importantly, were the Court to grant Tri-State's motion it would short circuit the Court's thorough consideration of its principal tasks on remand: determining the action EPA must take in light of the Supreme Court's decision and the disposition of MATS while EPA fulfills its obligation. Tri-State's motion is a poorly disguised Trojan Horse, masquerading as a motion about "one compliance obligation for one power plant" but advancing a theory of relief that could logically apply to *all* compliance obligations at *hundreds* of power plants. Tri-State's circumstances are not materially different from those of any other power plant owner that has obtained an extension simply to defer its decision on whether to invest in modern emission controls. The motion should be denied.

## ARGUMENT

I. **Tri-State Has Not Met The Requirements For Emergency Relief Under D.C. Circuit Rule 27(f).**

Tri-State has demonstrated neither that there is any "emergency," nor that "to avoid irreparable harm, relief is needed in less time than would ordinarily be required for this Court to receive and consider a response." D.C. Cir. Rule 27(f).

Tri-State claims that it faces a deadline of September 1, 2015, to decide whether to install controls for hydrochloric acid at its Nucla Station by April 2016, or to shut down Nucla Station in April 2016. Motion at 2, 8, 11 (Doc. 1565685). That is not true. In its request to the Air Pollution Control Division of the Colorado Department of Public Health and Environment ("Division") for a one year extension, Tri-State suggested a September 1, 2015 deadline for deciding whether it would install dry sorbent injection—a common technology for controlling hydrochloric acid emissions—*or would seek an additional extension of time from EPA*. Tri-State Compliance Extension Request dated June 5, 2014 ("Extension Request"), attached hereto as Exhibit A, at 3-4. In fact, in that request Tri-State states that it "will" apply for such an extension by October 1, 2015 if it chooses not to install emission controls. *Id.* at 4. The alternative to installing controls is not retirement, as Tri-State insists in its motion; the alternative is obtaining a further extension on reliability grounds. *Compare* Motion at 8 *with* Extension Request at 2-3. In fact, in its letter to the Division, Tri-State clearly expressed its desire to avoid retirement. *Id.* at 3.

The extension granted by the Division explicitly acknowledged that Tri-State could seek an additional extension from EPA if it chose not to install emission controls. Colorado Department of Public Health and Environment Letter dated June 27, 2014 ("Extension"), attached hereto as Exhibit B, at 2. Tri-State is silent as to whether it has pursued an additional extension; indeed, Tri-State fails even to mention this possibility to the Court. There is no reason in the record before the Court – if indeed Nucla Station must continue to operate to preserve reliability – that Tri-State could not obtain a further reliability-based extension from EPA that would allow Nucla Station to operate beyond April 2016. *See* 77 Fed. Reg. 9304, 9411 (Apr. 16, 2012). Tri-State has failed to exhaust its administrative remedies in this regard.

Tri-State has also failed to exhaust its administrative remedies with the Division; it has not requested deferral of the September 1 decision deadline that it proposed and the Division accepted. There is no reason in the record before the Court that the Division would not be willing to defer this deadline. After all, the Division responded very promptly to the Extension Request (seventeen days), and adopted precisely the schedule Tri-State proposed.

Even if the "harm" articulated by Tri-State would constitute "irreparable harm" – which it would not, as discussed below – there is no reason why Tri-State's motion should be decided on an emergency basis. Tri-State has permission to operate with or without emission controls until April 2016, eight months from now. The Court will shortly entertain motions to govern further proceedings and will render its

decision on the issues on remand, including the disposition of MATS. That decision is likely to come long before April 2016, when the MATS limits will first apply to Nucla Station. If the Court holds – as it should – that MATS will remain in effect, Tri-State will have time to install controls,[2] to seek an additional extension or to petition the Court for further relief. In the meantime, Tri-State has failed to demonstrate that "relief is needed in less time than would ordinarily be required" (*see* D.C. Cir. Rule 27(f)) and is not entitled to emergency relief. The motion should be denied.

## II. Tri-State Fails To Demonstrate Irreparable Harm.

Tri-State makes reference to the four criteria required for a stay of a rule. Motion, at 7. It fails to make any showing on the likelihood of success on the merits; "merits" in the peculiar procedural posture of this case meaning whether MATS will ultimately remain in effect after EPA reconsiders its finding. The motion should be rejected on this basis alone. Tri-State makes desultory showings on harm to third parties and the public interest, which we will not address at length here.[3] Tri-State

---

[2]     Significantly, Tri-State informed the Division that if it could not obtain a "reliability-based extension" from EPA, it might nonetheless choose to install controls by April 2016. Extension Request at 4 & n.2. Tri-State's schedule called for an extension application by October 1, 2015. If Tri-State could install controls by April 2016 even after waiting for a decision on an October 2015 extension request to EPA, there is no reason to believe it could not do so after receiving this Court's decision on remand.

[3]     Tri-State ignores both EPA's findings about the health risks associated with acid gas emissions from power plants and this Court's prior decision. Power

maintains that it has demonstrated "irreparable harm," but the "harm" described by Tri-State rests on a false choice between only two options – installation of controls or retirement by April 2016 – when other options are available.

As noted above, if Nucla Station is necessary to preserve reliability, as Tri-State maintains (Motion at 6), Tri-State may obtain an extension beyond April 2016 according to EPA guidance. If Nucla Station is not necessary for reliability, Tri-State could install controls if economically justified (*see supra* n.2), or temporarily cease operations in April 2016 to await EPA's decision on remand (or the Court's, in the unlikely event that it is not rendered before April 2016).

Tri-State has failed to meet the standard for a stay because Tri-State has not demonstrated it will suffer irreparable harm. Tri-State has not shown that its injury will be "certain and great" if this Court fails to act. *See Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("injury must be certain and great; it must be actual and not theoretical"). To the contrary, the record offered by Tri-State regarding harm is ambiguous and hypothetical.

---

plants emit the vast majority of hydrochloric acid (82%) and hydrofluoric acid (62%) in the United States, 77 Fed. Reg. at 9,310 (percentages of total U.S. emissions in 2005 inventory), and EPA recognized that these acid gases have serious acute and chronic health effects, 76 Fed. Reg. 24,976, 25,004-05, 25,050-51 (May 3, 2011), and potentially increase atmospheric levels of "chronic respiratory toxicants," 76 Fed. Reg. at 25,016. This Court denied petitioners' challenges to EPA's decision not to set less stringent, health-based emissions standards for acid gases. *White Stallion Energy Center, LLC v. EPA*, 748 F.3d 1222, 1248 (2014).

Tri-State has alleged only that it will have to spend "millions of dollars" *if it were to install pollution controls. See* Motion at 2. Tri-State, less than one month from deciding whether to install those controls, certainly knows what those costs would be, but does not share them with the Court. More importantly, Tri-State carefully avoids any firm statement as to whether it *will* install controls and incur those costs. *See, e.g.,* Motion, Attachment A at ¶¶ 16, 18, 19, 22. Tri-State also fails to provide the Court with a date by which Tri-State must make its decision to install controls in order to continue operating after April 2016. *Id.* at ¶¶ 18, 19, 22. Tri-State does, however, state that if it does install controls, it will be reimbursed for those costs by its member companies: 44 local distribution systems. Motion at 9 & Attachment A at ¶¶ 3-4.

Tri-State's general averments of financial harm fall well short of the standard for irreparable injury. "[F]inancial harm alone cannot constitute irreparable injury unless it threatens the very existence of the movant's business." *Sociedad Anonima Vina Santa Rita v. Dep't of Treasury*, 193 F. Supp. 2d 6, 14 (D.D.C. 2001); *see also Wisconsin Gas Co.*, 758 F.2d at 674. Nucla Station is but one of "a number of coal-fired units" owned by Tri-State. Motion at 5. Nothing in the motion supports the conclusion that the closure of Nucla Station, or even a large expenditure at Nucla Station, would "threaten[] the very existence" of Tri-State's business. *See Va. Petrol. Jobbers Ass'n v. Federal Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough."). To the contrary, Tri-State

would be reimbursed for any costs it incurs to install controls, and so it would suffer *no financial injury at all.* Motion at 9.

Similarly, Tri-State offers no specific assessment of the anticipated rate impacts if it were to install controls. Here again, general allegations that customers would have to pay something more were Tri-State to install controls fail to establish irreparable injury to Tri-State, or even to its customers, if Tri-State were somehow able to stand in their shoes. Tri-State has not provided the type of robust record which this Court demands to support extraordinary relief.

### III. The Court Should Address The Status Of MATS In Due Course.

This Court will decide after full briefing and due consideration the questions raised by the Supreme Court's remand. Certainly, some petitioners will seek the precise sort of relief sought by Tri-State, and the Court will have the opportunity to determine whether such relief is appropriate for all similarly-situated parties, based on the rulemaking record before it. Tri-State's motion attempts to force the Court to decide this issue prematurely, on truncated briefing and hand-selected facts. The Court should deny the motion, and decide on the relief to which Tri-State and its peers are entitled – if any – in due course.

### CONCLUSION

For the reasons set forth above, Industry Respondent Intervenors respectfully request that this Court deny the Motion.

August 10, 2015                          Respectfully submitted,

                                         /s/ Brendan K. Collins
                                         Brendan K. Collins
                                         Robert B. McKinstry, Jr.
                                         Ronald M. Varnum
                                         Lorene L. Boudreau
                                         BALLARD SPAHR LLP
                                         1735 Market Street, 51st Floor
                                         Philadelphia, PA 19103-7599
                                         Telephone: (215) 665-8500
                                         Facsimile: (215) 864-8999

                                         *Counsel for Industry Respondent Intervenors*

## CERTIFICATE OF SERVICE

I, Brendan K. Collins, a member of the Bar of this Court, hereby certify that on August 10, 2015, I electronically filed the foregoing "Response of Industry Respondent Intervenors In Opposition to Tri-State Generation and Transmission Association Inc.'s Emergency Motion" with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system, which will serve registered counsel through the Court's CM/ECF system.

I further certify that I caused copies of the Response to be filed by hand with the Court.

/s/ Brendan K. Collins
Brendan K. Collins

# EXHIBIT A

085-0001

June 5, 2014

JUN 10 2014

Mr. Matthew Burgett
Colorado Department of Public Health & Environment
ASD-AR-B1
4300 Cherry Creek Drive South
Denver, CO 80246-1530

Re:    **Compliance Extension Request for Tri-State's Nucla Station Pursuant to the
National Emission Standards for Hazardous Air Pollutants: Coal- and Oil-Fired
Electric Utility Steam Generating Units located at 40 CFR 63 Subpart UUUUU
(MATS Rule)**

Dear Mr. Burgett:

Tri-State Generation and Transmission Association, Inc. (Tri-State) hereby requests a
one-year extension (until April 16, 2016) for the Nucla Station power plant to comply with one
of the requirements of EPA's Mercury and Air Toxics Standards (the MATS Rule). Nucla
complies with the mercury and particulate matter standards of the MATS Rule but is requesting a
one-year extension of the compliance deadline for meeting the new standard for hydrochloric
acid (HCl). Tri-State submitted a similar request in December 2013 but later withdrew that
request in order to gather additional information requested by CDPHE. This letter (along with
the attachments) provides the information that CDPHE has requested.

As you know, EPA issued the MATS Rule based primarily on concerns about mercury
emissions and the MATS Rule sets stringent new limits for mercury emissions from coal-fired
plants. However, it also sets emission limits for particulate matter (as a surrogate for non-
mercury metals), and HCl (as a surrogate for sulfur dioxide). Nucla Station rivals other coal
fired facilities for the lowest mercury emissions in the nation and currently complies with the
new MATS Standard for particulate matter. Unfortunately, our initial evaluations show that the
controls that would be necessary for the Nucla Station to meet the new HCl standard would be
costly and may not be justified given the additional layered costs we face at Nucla for
compliance with coal ash, wastewater effluent standards, and greenhouse gas standards.

Nucla Station is the smallest of Tri-State's coal-fired plants. It is a 100 megawatt
circulating fluidized bed (CFB) unit that, in recent years, has relatively low utilization factors.
Nevertheless, because of transmission constraints in western Colorado, it currently plays an
important role in terms of ensuring system reliability. Tri-State has planned and is moving
forward with substantial transmission system upgrades in western Colorado to meet increasing
member loads. Tri-State will need the Nucla Station to operate during the two phases of the
transmission system upgrades to reduce the risk of system failure and the creation of high risk



situations for possible black out conditions for residential, commercial and industrial users in southwest Colorado.

In the preamble to the final MATS Rule, EPA specifically noted that it would be appropriate for states to grant extensions where "transmission upgrades were needed in order to maintain electric reliability . . . but could not be completed within 3 years." 77 Fed. Reg. 9,410 (April 16, 2012). In this regard, EPA also stated:

> While the ultimate discretion to provide a 1-year extension lies with the permitting authority, EPA believes [that there is a] reasonable justification for granting the 1-year extension if the permitting authority determines, for example, based on information from the RTO or other planning authority or other entities with relevant expertise, that continued operation of a particular unit....is necessary to avoid a serious risk to electric reliability.

77 Fed. Reg at 9,410.

The transmission upgrades to improve reliability in western Colorado involve rebuilding the existing Montrose – Nucla – Cahone 115 kilovolt (kV) transmission line, upgrading it to a 230 kV transmission line and constructing three new 230 kV substations. Attached are maps showing the Montrose-Nucla-Cahone transmission upgrade and the location of Nucla Station on that line. This portion of the Tri-State transmission system was originally constructed in 1958 and needs to be updated to provide reliable service to a growing load. The project planning for the system upgrade has been ongoing for several years, but the planning process is lengthy and time consuming.

The transmission upgrades require removing the Nucla – Cahone circuit from service in the first phase of the project, and then removing the Montrose – Nucla circuit from service in the second phase. The operation of Nucla Station during this project will help prevent overloading transmission lines/facilities and will also provide support to stabilize voltages across the system in southwest Colorado, as required by mandatory regulatory standards.[1]

---

[1] Section 215 of the Federal Power Act requires the Electric Reliability Organization (ERO) to develop mandatory and enforceable reliability standards. FERC designated the North American Electric Reliability Corporation (NERC) as the ERO with responsibility for the mandatory reliability standards. These standards are published on the NERC website, http://www.nerc.com/pa/Stand/Reliability%20Standards%20Complete%20Set/RSCompleteSet.pdf. The Transmission Planning Standards require the transmission system, in pre- and post-contingency states, to be stable with both thermal and voltage limits remaining within emergency thermal ratings and system voltage limits, with any loss or curtailment of load being planned and controlled. See pages 1626 – 1684 of the published Standards.



The aforementioned standards are applicable to transmission planners and planning authorities registered with the North American Electric Reliability Corporation (NERC). Two neighboring planning authorities, the Western Area Power Administration (WAPA) and Public Service Company of Colorado, have reviewed Tri-State's analysis of system performance with and without Nucla. Attached is correspondence from both these entities supporting Tri-State's conclusion that there would be serious risks to electric reliability in the region if Nucla Station were unavailable during the construction of the transmission upgrade described above. *See* Exhibits A and B, Nucla Generation Support of Montrose Nucla Reconstruction.

The transmission system upgrades will not be completed by April 2016 – which would be the new compliance deadline if CDPHE grants the extension requested for Nucla Station. In anticipation that such situations might arise, EPA has created a process under which the MATS Rule compliance deadline could be extended beyond one year if necessary to ensure reliability. This process is described at:
http://www.epa.gov/mats/pdfs/EnforcementResponsePolicyforCAA113.pdf. Please note, however, that this process assumes that the plant in question has already obtained a one-year compliance extension from its permitting authority. Thus, EPA has recognized that states may grant one-year extensions even when a facility may not come into full compliance with the MATS Rule within one year, if the facility is needed to maintain system reliability.

Tri-State has taken the initial steps necessary to pursue this option (getting an extension of more than one year from EPA). Given the dispatch cost of Nucla Station and its low capacity factors, we initially believed that it would not be economically feasible to install additional pollution controls. However, given our commitment to our employees and the town of Nucla, which receives most of its tax revenue from Nucla Station, we would like to keep Nucla Station in operation even after the transmission upgrade is completed if there is a feasible option for meeting new regulatory requirements. As a result, we are now conducting in depth studies to determine whether it may be technically and economically feasible to install dry sorbent injection (DSI) to meet the MATS limits for HCl. Among other things, this has required an analysis of whether the sorbent injection will increase particulate matter emissions and therefore require upgrades to the current particulate matter controls at the plant.

Because Tri-State has not yet determined whether it is economically feasible to install additional pollution controls, we are seeking a compliance extension that would allow us to preserve two options for coming into compliance with the MATS Rule:

(1) Install additional pollution controls to meet the HCl limit that would be operational by April 16, 2016, OR





(2) Obtain from EPA (and/or DOJ) an extension long enough to complete the necessary transmission upgrades.

Because Tri-State is still exploring both options, we propose the following compliance schedule:

- Tri-State will select one of these compliance strategies no later than September 1, 2015.

- If Tri-State elects to install DSI, Tri-State will commence installation of DSI no later than October 1, 2015.

- If Tri-State elects to install DSI, Tri-State will complete installation of DSI and comply with the MATS Rule no later than April 16, 2016.

- If Tri-State elects to not install DSI, Tri-State will submit an application to EPA by October 1, 2015 to obtain an additional reliability-based extension (beyond one year).[2]

Tri-State appreciates your consideration of our request. Please contact Dan Casiraro or me at (303) 452-6111 if you have any questions or need additional information to process our request.

Sincerely,

Barbara A. Walz
Senior Vice President, Policy & Compliance,
Chief Compliance Officer

BAW:DJC:dkg

---

[2] If we elect this option, we would expect to obtain an additional extension beyond one-year from EPA and/or DOJ. If we are not able to obtain such an extension, Tri-State would temporarily cease operations at Nucla by April 16, 2016, and, in consultation with the planning authorities, decide whether it is necessary to install additional controls to address reliability concerns. In this case, Nucla would be shut down temporarily and not be put back into service until it can comply with all the requirements of the MATS Rule. Also, if there is a change in the HCl limits that apply to Nucla, Tri-State would notify CDPHE of such change and determine whether Nucla could comply with the MATS Rule without the installation of additional controls.



Mr. Matthew Burgett
June 5, 2014
Page **5**


CC:    Blue Parish, APCD
       William Allison, APCD
       Kirsten King, APCD
       Roland Hea, APCD

*AN EQUAL OPPORTUNITY / AFFIRMATIVE ACTION EMPLOYER*

A Touchstone Energy® Cooperative

# Maps of Montrose – Nucla – Cahone Rebuild

# Montrose – Nucla – Cahone Rebuild



**Legend**

— Transmission Line - TSGT

—— Transmission Line - Other Utility

# Montrose – Nucla – Cahone Rebuild



# Exhibit A

## Western Area Power Administration Support of Nucla Station Availability

| From: | Easton, Robert |
| To: | Taylor, Blane; Stellern, Gerry (Gerry.Stellern@XCELENERGY.COM); Tom Green (thomas.green@xcelenergy.com) |
| Cc: | Pink, Chris |
| Subject: | RE: Nucla generation support of Montrose Nucla reconstruction |
| Date: | Tuesday, March 11, 2014 10:55:44 AM |

Blane,

WAPA agrees with the results of your analysis suggesting that the Nucla generation is needed through the entire construction sequencing of the Montrose – Nucla – Cahone 115- to 230-kV upgrade project.

Regards,



**Robert H. Easton**
Transmission Planning North
J7100

(970) 461-7272 Work
(970) 481-8581 Mobile
aeaston@wapa.gov
5555 E Crossroads Blvd
Loveland, CO 80538

**From:** Taylor, Blane [mailto:btaylor@tristategt.org]
**Sent:** Monday, February 17, 2014 10:55 AM
**To:** Easton, Bob; Stellern, Gerry (Gerry.Stellern@XCELENERGY.COM)
**Cc:** Pink, Chris
**Subject:** Nucla generation support of Montrose Nucla reconstruction

Bob, Gerry,

Tri-State is committed to coordinating our planning efforts, especially in areas where we share transmission rights or facilities with other Transmission Owners. As we discussed in person last week, we have concerns about the performance of the transmission system in southwest Colorado during the 6 month reconstruction of the Montrose – Nucla transmission line in 2018. Due to our concerns, we specifically studied this scenario and found the possibility for significant overloads and low voltage conditions following credible category B and C contingencies in the area.

We believe that if the Nucla Generation Station is unavailable during this time, serious risk to electric reliability in the region would result. It is too early for us to assign a probability for the Nucla station's availability. Nevertheless, I wanted to share with you the study results for your consideration, validation, and to provide some advance notice to some potential issues in this region.

Please feel free to contact myself or my Bulk Planning Manager, Chris Pink, if you have any questions or would like to discuss the approach and results of this study in more detail.

It would be helpful if you send me your findings and conclusions about the requirements for construction support, specifically with regard to the availability of Nucla station, during the proposed construction period of the Montrose – Nucla line segment in 2018. An email would be sufficient. This request is limited to the specific construction window. It does not incorporate any considerations about the long-term viability or long-term operation of the Nucla station. Our interest is in validating our engineering analysis of system needs during the Montrose – Nucla construction phase.

Thank you.
Blane

# Exhibit B

## Excel Energy (PSCo) Support of Nucla Station Availability

| From: | Green, Thomas W |
| To: | Taylor, Blane |
| Cc: | Pink, Chris; "Easton, Robert"; Mirzayi, Betty |
| Subject: | RE: Nucla generation support of Montrose Nucla reconstruction |
| Date: | Thursday, April 03, 2014 1:53:37 PM |

Blane,

Thank you for the opportunity to review your Nucla Generation Study results. PSCo agrees that there are operational benefits to keeping the Nucla generation on-line during construction of the Montrose – Nucla – Cahone project. Feel free to contact me if you need anything else.

Tom

*Thomas W. Green, P.E.*
**Xcel Energy**
1800 Larimer St., Suite 600
Denver, CO 80202
Office: (303) 571-7223
thomas.green@xcelenergy.com

**From:** Taylor, Blane [mailto:btaylor@tristategt.org]
**Sent:** Monday, February 17, 2014 10:55 AM
**To:** Easton, Bob; Stellern, Gerry (Gerry.Stellern@XCELENERGY.COM)
**Cc:** Pink, Chris
**Subject:** Nucla generation support of Montrose Nucla reconstruction

Bob, Gerry,

Tri-State is committed to coordinating our planning efforts, especially in areas where we share transmission rights or facilities with other Transmission Owners. As we discussed in person last week, we have concerns about the performance of the transmission system in southwest Colorado during the 6 month reconstruction of the Montrose – Nucla transmission line in 2018. Due to our concerns, we specifically studied this scenario and found the possibility for significant overloads and low voltage conditions following credible category B and C contingencies in the area.

We believe that if the Nucla Generation Station is unavailable during this time, serious risk to electric reliability in the region would result. It is too early for us to assign a probability for the Nucla station's availability. Nevertheless, I wanted to share with you the study results for your consideration, validation, and to provide some advance notice to some potential issues in this region.

Please feel free to contact myself or my Bulk Planning Manager, Chris Pink, if you have any questions or would like to discuss the approach and results of this study in more detail.

It would be helpful if you send me your findings and conclusions about the requirements for construction support, specifically with regard to the availability of Nucla station, during the

proposed construction period of the Montrose – Nucla line segment in 2018. An email would be sufficient. This request is limited to the specific construction window. It does not incorporate any considerations about the long-term viability or long-term operation of the Nucla station. Our interest is in validating our engineering analysis of system needs during the Montrose – Nucla construction phase.

Thank you.
Blane

**Deltak Census Information**

| Row Labels | Count of County |
|---|---|
| Anoka | 10 |
| Arapahoe | 1 |
| Boulder | 2 |
| Broomfield | 2 |
| Carver | 4 |
| Chisago | 2 |
| Dakota | 3 |
| Denver | 1 |
| Douglas | 1 |
| Duval | 1 |
| Hennepin | 59 |
| Itaska | 1 |
| Jefferson | 4 |
| Linn | 1 |
| Marathon | 1 |
| McLeod | 3 |
| Meeker | 1 |
| Mille Lacs | 1 |
| Minnehaha | 1 |
| Powhatan | 1 |
| Ramsey | 12 |
| Scott | 4 |
| Sherburne | 14 |
| St. Croix | 1 |
| St. Louis | 1 |
| Washington | 3 |
| Wright | 22 |
| **Grand Total** | **157** |

| County | % |
|---|---|
| Anoka, MN | 6 |
| Arapahoe, CO | 1 |
| Boulder, CO | 1 |
| Broomfield, CO | 1 |
| Carver, MN | 3 |
| Chisago, MN | 1 |
| Dakota, MN | 2 |
| Denver, CO | 1 |
| Douglas, CO | 1 |
| Duval, FL | 1 |
| Hennepin, MN | 38 |
| Itaska, MN | 1 |
| Jefferson, CO | 3 |
| Linn, IA | 1 |
| Marathon, WI | 1 |
| McLeod, MN | 2 |
| Meeker, MN | 1 |
| Mille Lacs, MN | 1 |
| Minnehaha, SD | 1 |
| Powhatan, VA | 1 |
| Ramsey, MN | 8 |
| Scott, MN | 3 |
| Sherburne, MN | 9 |
| St. Croix, WI | 1 |
| St. Louis, MN | 1 |
| Washington, MN | 2 |
| Wright, MN | 14 |
| **Total** | **100** |

# EXHIBIT B

# STATE OF COLORADO

John W. Hickenlooper, Governor
Larry Wolk, MD, MSPH
 Executive Director and Chief Medical Officer

Dedicated to protecting and improving the health and environment of the people of Colorado

4300 Cherry Creek Dr. S.
Denver, Colorado 80246-1530
Phone (303) 692-2000
Located in Glendale, Colorado

www.colorado.gov/cdphe



Colorado Department
of Public Health
and Environment

June 27, 2014

Barbara A. Walz
Senior Vice President
Policy & Compliance
Chief Compliance Officer
Tri-State Generation and Transmission Assoc., Inc.
P.O. Box 33695
Denver, CO 80233-0695

**Re: Nucla – Response to 12 Month MATS Rule Extension Request**

Dear Ms. Walz,

This letter is in response to the June 5, 2014 Tri-State Generation and Transmission Association, Inc. (Tri-State) request specific to the Nucla Station power plant for an extension to the April 16, 2015 compliance date for the federal National Emission Standards for Hazardous Air Pollutants (NESHAP) From Coal- and Oil-Fired Electric Utility Steam Generating Units, at 40 CFR Part 63, Subpart UUUUU, otherwise known as the Mercury and Air Toxics Standard (MATS) Rule. Specifically, you requested an extension to the hydrochloric acid (HCl) standard of this rule, and identified that Nucla can comply with the mercury and particulate matter standards of the rule. The Air Pollution Control Division (Division) is approving Tri-State's request to extend the MATS Rule HCl compliance date to April 16, 2016. The basis and conditions for the one-year extension are described below.

Tri-State requested a one-year extension to the MATS Rule HCl compliance date for the Nucla Station (AIRS ID 085/0001). Nucla Station is an existing coal-fired electric generating unit subject to the MATS Rule. The compliance date in the MATS Rule for the Nucla Station is April 15, 2015.

Tri-State has stated that the compliance extension is requested because substantial transmission upgrades are necessary in western Colorado, and the Nucla Station must remain on line until these upgrades can be completed. The extension application implies that the Nucla Station is planned for retirement. Tri-State has also submitted statements from planning authorities supporting the need for transmission upgrades and Nucla's operation during these upgrades. As further justification for the extension, Tri-State cites EPA's position that transmission upgrades necessary to maintain electric reliability after a unit is retired constitutes "installation of controls."[1] The Division agrees with EPA's position on this issue.

Tri-State's request letter also states that you will be conducting studies to determine if it is feasible to install dry sorbent injection (DSI) controls to meet the MATS Rule HCl standard. The installation of DSI controls may result in the ongoing operation of the Nucla station. However, you state that controls would not be installed prior to the MATS Rule compliance date.

---

[1] 77 Fed. Reg. at 9410 (Feb. 16, 2012).

Compliance extension provisions at 40 CFR Section 63.6(i)(4)(i)(A) state that the Division may grant an extension allowing an affected source up to one additional year to comply with the standard, if such an additional period is necessary for the installation of controls. The compliance extension request must include the following information:

    (A) A description of the controls to be installed to comply with the standard;
    (B) A compliance schedule, including the date by which each step toward compliance will be reached.

Based on our review of Tri-State's request, the Division grants a one-year compliance extension of the MATS Rule HCl standard requirements for the Nucla Station. The compliance extension applies to all HCl emission limitations, work practice standards, testing and monitoring requirements of the MATS rule that apply to the Nucla Station. This compliance extension does not apply to any mercury standards, particulate matter standards, or other requirements not associated with the HCl standard. The compliance extension is granted considering the facts and rationale set forth in Tri-State's June 5, 2014 extension request letter.

The one-year compliance extension is granted based upon the following conditions:
1) This extension applies only to the coal-fired boiler at the Nucla Station; and
2) This extension terminates on April 16, 2016; and
3) Nucla has provided the following compliance schedule:
    a. Tri-State will decide whether to install DSI controls at Nucla Station by September 1, 2015.
    b. Tri-State will commence installation of HCl controls no later than October 1, 2015 if they elect to install controls.
    c. Tri-State will complete installation of HCl controls and fully comply with the MATS rule no later than April 16, 2016 if they elect to install controls.
    d. If Tri-State elects not to install HCl controls, they may seek an additional extension from the U.S. EPA.
4) Tri-State must submit a Title V permit modification to the Division within 60 days of receipt of this letter to incorporate the conditions of the extension of compliance into the Nucla Title V permit per 40 CFR 63, Section 63.6(i)(4)(i)(A).
5) Pursuant to Section 63.6(i)(11), Tri-State shall provide the Division with progress reports within 30 days, or earlier, of the compliance schedule dates listed above indicating progress towards meeting those milestones.

Should you have questions concerning this letter, please contact Matt Burgett at (303) 692-3183, or by email at: Matt.Burgett@state.co.us.

Sincerely,

Matthew S. Burgett, P.E.
Title V Operating Permit Unit Supervisor
Air Pollution Control Division
Colorado Department of Public Health & Environment


Cc:    Blue Parish, APCD
        William Allison, APCD (electronic copy)
        Kirsten King, APCD (electronic copy)
        Roland Hea, APCD (electronic copy)
        Chris Reinhardt, APCD (electronic copy)

Jeremy Neustifter, APCD (electronic copy)
Shannon McMillan, APCD (electronic copy)
Hans Buenning, EPA Region 8 (electronic copy)
Dan Casiraro, Tri-State (electronic copy)