**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____
)
White Stallion Energy Center, LLC, et al.,    )
)
       Petitioners,    )
)
    v.    )    No. 12-1100
)    (and consolidated cases)
United States Environmental Protection Agency,    )
)
       Respondent.    )
_____)

**RESPONDENT'S OPPOSITION TO THE MOTION
OF TRI-STATE GENERATION AND TRANSMISSION
ASSOCIATION INC. FOR SUSPENSION OF ITS
COMPLIANCE OBLIGATION**

# TABLE OF CONTENTS

BACKGROUND ........................................................................................1

ARGUMENT .........................................................................................6

   I.    Relief From This Court Is Not Appropriate Absent
        Exhaustion of Administrative Relief.........................................6

   II.   Tri-State Has Failed to Demonstrate the Four Factors
        Required for a Stay of the Rule................................................11

CONCLUSION .....................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n,*
  988 F.2d 146 (D.C. Cir. 1993)................................................................12

*Appalachian Power Co. v. EPA,*
  249 F.3d 1032 (D.C. Cir. 2001)...............................................................9

*Envtl. Def. Fund, Inc. v. Costle,*
  578 F.2d 337 (D.C. Cir. 1978)................................................................8

*Greater Boston Television Corp. v. FCC,*
  463 F.2d 268 (D.C. Cir. 1972)................................................................8

*Hannah v. United States,*
  410 F.2d 1049 (D.C. Cir. 1969)..............................................................7

*Int'l Harvester Co. v. Ruckelshaus,*
  478 F.2d 615 (D.C. Cir. 1973)................................................................8

*Michigan v. EPA,*
  135 S. Ct. 2699 (June 29, 2015) ................................................... passim

*Nken v. Holder,*
  556 U.S. 418 (2009)...........................................................................11

*North Carolina v. EPA,*
  550 F.3d 1176 (D.C. Cir. 2008).............................................................13

*NRDC v. Train,*
  510 F.2d 692 (D.C. Cir. 1974)................................................................8

*Powell v. U.S. Bureau of Prisons,*
  927 F.2d 1239 (D.C. Cir. 1991)..............................................................7

*U.S. v. L.A. Tucker Truck Lines, Inc.,*
  344 U.S. 33 (1952)................................................................................9

*United States v. Arrington*,
  763 F.3d 17 (D.C. Cir. 2014)................................................................7

*White Stallion Energy Center, LLC v. EPA*,
  748 F.3d 1222 (D.C. Cir. 2014)................................................. passim

*Wisconsin Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985)..........................................................14

## STATUTES

28 U.S.C. § 2106..............................................................................6, 7

42 U.S.C. § 7412...................................................................................1

42 U.S.C. § 7412(i)(3)(A)....................................................................3

42 U.S.C. § 7412(n)(1)(A)...............................................................1, 2

42 U.S.C. § 7607(d)(7)(B)...................................................................9

42 U.S.C. § 7661a(d)(1).......................................................................5

## FEDERAL REGISTER NOTICES

65 Fed. Reg. 49,919 (Aug. 16, 2000) ..................................................5

76 Fed. Reg. 24,976 (May 3, 2011) .............................................. 15, 16

77 Fed. Reg. 9,304 (Feb. 16, 2012) ............................................. passim

Respondent Environmental Protection Agency ("EPA") hereby opposes the

motion of Tri-State Generation and Transmission Association, Inc. ("Tri-State") to

partially toll the April 2016 compliance deadline for Tri-State's "Nucla Station"

power plant, located in Nucla, Colorado, for the time between the Supreme Court's

decision in *Michigan v. EPA*, 135 S. Ct. 2699 (June 29, 2015), and EPA's action

on remand of the Mercury and Air Toxics Standards ("the Rule").  The *Michigan*

decision reversed a portion of this Court's holding in *White Stallion Energy*

*Center, LLC v. EPA*, 748 F.3d 1222 (D.C. Cir. 2014)—regarding EPA's

interpretation of the role of costs under Clean Air Act ("CAA") section

112(n)(1)(A), 42 U.S.C. § 7412(n)(1)(A)—and remanded to this Court for further

proceedings.  As discussed below, neither Tri-State's alleged dilemma nor the

*Michigan* decision provide a basis for the unusual relief that Tri-State seeks.

Accordingly, Tri-State's motion should be denied.

## BACKGROUND

On February 16, 2012, pursuant to CAA section 112, 42 U.S.C. § 7412, EPA

promulgated the Rule at issue here.  *See* National Emission Standards for

Hazardous Air Pollutants From Coal- and Oil-Fired Electric Utility Steam

Generating Units and Standards of Performance for Fossil-Fuel-Fired Electric

Utility, Industrial-Commercial-Institutional, and Small Industrial-Commercial-

Institutional Steam Generating Units, 77 Fed. Reg. 9304 (Feb. 16, 2012).  In the

Rule, EPA promulgated technology-based emission standards under CAA section 112(d) for hazardous air pollutants that are emitted by coal- and oil-fired electric generating units ("power plants"), including promulgating standards for HCl as a surrogate for acid gases.[1] *See id.* at 9367-69. As part of the Rule, EPA reaffirmed its 2000 finding under CAA section 112(n)(1)(A) that the regulation of hazardous air pollutants from power plants was "appropriate and necessary." *See id.* at 9310-11; *see also White Stallion*, 748 F.3d at 1232.[2] In reaffirming the 2000 finding, EPA relied in part on technical analyses that demonstrated that coal- and oil-fired power plants in the United States pose hazards to public health. *See* 77 Fed. Reg. at 9310-11. EPA found, among other things, that these plants "remain the largest domestic source of [mercury] emissions and several [hazardous air pollutants including hydrochloric acid ("HCl")], and are among the largest contributors for other [hazardous air pollutants] . . . ." 77 Fed. Reg. at 9310. In reaffirming the

---

[1] The Rule regulates HCl as a surrogate for acid gas hazardous air pollutants. Certain coal-fired power plants, including the Nucla Station, can also comply with the Rule by demonstrating compliance with the Rule's alternative equivalent $SO_2$ emission standard. *See id.* at 9367.

[2] In section 112(n)(1)(A), Congress directed EPA to conduct a study to evaluate the hazards to public health resulting from emissions of hazardous pollutants from power plants, if any, that would reasonably be anticipated to occur following imposition of the requirements of the Act, and to report the results of such study to Congress by November 15, 1993. Congress further required EPA to regulate power plants under section 112 if EPA makes a determination that such regulation is "appropriate and necessary," after considering the results of the study. 42 U.S.C. § 7412(n)(1)(A).

finding, EPA also concluded that section 112(n)(1)(A) did not call for EPA to consider costs in making an "appropriate and necessary" finding under CAA section 7412(n)(1)(A). *See* 77 Fed. Reg. at 9324-27; *see also White Stallion*, 748 F.3d at 1230.

The Rule and the CAA provide flexibility for compliance with the emission standards in several ways. First, the Rule provided a compliance deadline of three years for existing sources, which is the maximum compliance time allowed under CAA section 112(i)(3)(A), 42 U.S.C. § 7412(i)(3)(A). *See* 77 Fed. Reg. at 9407. EPA also provided guidance regarding the possibility of obtaining an extension for a fourth year from the relevant permitting authorities under section 112(i)(3)(B) if such time is needed for the installation of controls. *See id.* at 9409-10. In response to comments and due to factors unique to the power industry, EPA endorsed a broad reading of the term "installation of controls" that would allow permitting authorities to grant extensions where a company's compliance choice was to retire a plant but doing so within the three-year time frame would cause reliability problems. *Id.* Finally, EPA's Office of Enforcement and Compliance Assurance separately issued an enforcement response policy to provide additional flexibility for certain reliability-critical power plants. *See* Ex. A (December 2011 EPA Enforcement Response Policy); *see also* 77 Fed. Reg. at 9411 (describing the policy to be issued).

On consolidated petitions for review before this Court, a number of petitioners challenged, among other things, EPA's interpretation of CAA section 112(n)(1)(A), arguing that the statute required EPA to consider costs when determining whether regulating power plants is "appropriate and necessary." *See White Stallion*, 748 F.3d at 1236. This Court concluded that section 112(n)(1)(A)'s terms were ambiguous, and that "EPA reasonably concluded it need not consider costs in making its 'appropriate and necessary' determination . . . ." *Id.* at 1237, 1241.

In *Michigan v. EPA*, however, the Supreme Court disagreed with this Court. Specifically, in a decision limited exclusively to the "grounds on which EPA acted," 135 S. Ct. at 2711, the Supreme Court explained that "[r]ead naturally in the present context, the phrase 'appropriate and necessary' requires at least some attention to cost," *id.* at 2707, and held that "EPA interpreted § 7412(n)(1)(A) unreasonably when it deemed cost irrelevant to the decision to regulate power plants." *Id.* at 2712. The Supreme Court explained, however, that it was not holding that a particular analysis of costs was required, and that on remand "[i]t [would] be up to the Agency to decide . . . how to account for cost." *Id.* at 2711. The Supreme Court then remanded the consolidated cases to this Court for further proceedings. *See id.* at 2712. This Court has not yet ordered motions to govern future proceedings, and the Rule remains in effect.

In light of the *Michigan* decision, Tri-State seeks from this Court

"emergency" relief tailored to one small coal-fired power plant, the Nucla Station,

which is located in a remote area and, by Tri-State's own concession, operates

infrequently.  *See* Tri-State Motion 2; *see also*

http://www.poweringthewest.org/2013/12/13/nucla-station-outages-yield-long-list-

of-completed-projects-plant-upgrades/ (describing regular and lengthy outages).[3]

Tri-State has availed itself of only one of the flexibilities provided under the Rule.

Specifically, in June 2014, Tri-State received a one-year extension of the Rule's

April 2015 compliance deadline (to April 2016) from the State of Colorado, which

is the relevant permitting authority for the Nucla Station under the Rule.  *See* Ex. C

(June 27, 2014, Letter from Colorado Department of Public Health and

Environment to Tri-State) (the "extension letter").[4]  According to the extension

letter, the one-year extension was based on an application that implied that Tri-

State planned to shut down the Nucla Station and that doing so by the April 2015

---

[3] Data submitted by Tri-State to EPA's Air Markets Program confirms that Nucla
Station operates only intermittently and frequently shuts down for months at a
time.  Lengthy outages since fall 2010 include: 09/10/2010–12/18/2010 (100 days);
03/16/2013–06/07/2013 (84 days); 09/14/2013–11/19/2013 (67 days); 03/07/2014–
05/07/2014 (62 days), 10/15/2014–12/19/2014 (66 days).  *See* Ex. B.

[4] Colorado has been approved to carry out the CAA's Title V permitting program.
*See* 42 U.S.C. § 7661a(d)(1); 65 Fed. Reg. 49,919 (August 16, 2000) (granting full
approval to Colorado's title V operating permit program, effective October 16,
2000).

compliance deadline would cause reliability issues until substantial transmission upgrades were complete. *See id.*; *see also* Exs. D and E (December 4, 2013 and June 5, 2014, Letters from Tri-State to Colorado requesting a one-year extension). Additionally, the extension letter states that Tri-State intended to conduct studies in order to determine whether Tri-State could install controls necessary to allow Nucla Station to meet the HCl standard in the Rule and remain in operation beyond its compliance deadline. *See id.*; *see also* Ex. D at 3. Tri-State's motion appears to concede that those studies were conducted and that Tri-State has concluded that no such controls are "economically justified" because of the Nucla Station's size and infrequent operation. *See* Tri-State Motion 2, 6; McInnes Decl. ¶ 14. The extension letter adopts a schedule proposed by Tri-State, which calls for Tri-State to decide whether to install controls by September 1, 2015. *See* Ex. C at 2. To EPA's knowledge, Tri-State has not attempted to seek further flexibility from the State or EPA in light of the *Michigan* decision. As explained further below, an additional extension by order of this Court for the length of time it takes EPA to address the *Michigan* decision on remand is not warranted.

## ARGUMENT

### I. Relief From This Court Is Not Appropriate Absent Exhaustion of Administrative Relief.

In its motion, Tri-State states that it is not seeking an injunction or a stay, *see* Tri-State Motion 7, n.1; instead, Tri-State relies on 28 U.S.C. § 2106 in support of

its unusual request to this Court for an extension of a single power plant's compliance deadline, *see id.* at 7, which is presumably set out in a State-issued permit, *see* Ex. C at 2 (requiring Tri-State to submit a permit modification to the State).  Section 2106 provides appellate courts with authority to

> affirm, modify, vacate, set aside, or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

28 U.S.C. § 2106.  Section 2106 was enacted to "liberate our appellate courts from the English common law restricting their authority," *United States v. Arrington*, 763 F.3d 17, 25 (D.C. Cir. 2014), but this Court has cautioned that authority under the provision is to be "exercised sparingly, guided by principles grounded in law and equity."  *Hannah v. United States*, 410 F.2d 1049, 1051 (D.C. Cir. 1969).  "Courts principally invoke § 2106 to fashion an appropriate remedy on direct appeal," such as reducing "to a lesser included offense where the evidence is insufficient to support an element of the offense stated in the verdict," "to suggest a different judge take over the case on remand," "to excuse a plaintiff's failure to file a cross-appeal against one of the defendants, . . . and, under exceptional circumstances, to authorize a court of appeals to recall its mandate."  *Arrington*, 763 F.3d at 25-26; *see also Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1246

(D.C. Cir. 1991) (describing section 2106 authority as "revisory" and limited to "extraordinary circumstances").

Although this Court has noted that section 2106 can be applied to agency orders and regulations on petitions for review, particularly "so as to permit enlightenment as to agency reasoning without undue intrusiveness[,]" *Envtl. Def. Fund, Inc. v. Costle*, 578 F.2d 337, 346 n.33 (D.C. Cir. 1978) (citing cases), the cases in which this Court has done so are not analogous to this case. *See, e.g., id.* at 346 (remanding for a report from the agency within 60 days regarding significant changes and plans to propose amended regulations in light of new data); *Greater Boston Television Corp. v. FCC*, 463 F.2d 268, 277 (D.C. Cir. 1972) (mentioning section 2106 in a discussion regarding authority to recall the mandate in light of new circumstances); *Int'l Harvester Co. v. Ruckelshaus*, 478 F.2d 615, 649-50 (D.C. Cir. 1973) (citing section 2106 in support of remand for public comment on information not previously subject to comment and in support of a 60-day remand for agency consideration of conditions for suspension of emission standards, but declining to grant suspension during remand); *NRDC v. Train*, 510 F.2d 692, 713-14 & n.112 (D.C. Cir. 1974) (on direct appeal of an order setting agency deadlines, reversing in part and remanding with specific agency deadlines and timing for seeking modification from the district court of those deadlines in light of the unusual circumstances of the case). Tri-State cites no case (and EPA

has not found any case) in which a court used section 2106 to alter a compliance deadline of a Rule for one regulated entity in circumstances analogous to those at issue here.

Indeed, Circuit Rule 18(a)(1) requires that a party seeking a stay of an administrative action *or other emergency relief* "must state whether such relief was previously requested from the agency and the ruling on that request." D.C. Circuit Rule 18(a)(1). Additionally, administrative law generally requires that parties aggrieved by agency action bring their concerns to the agency first. *See U.S. v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."); 42 U.S.C. § 7607(d)(7)(B) (limiting challenges to those raised with reasonable specificity during the public comment period); *Appalachian Power Co. v. EPA*, 249 F.3d 1032, 1065 (D.C. Cir. 2001) (holding that under 42 U.S.C. § 7607(d)(7)(B), petitioners must first raise objections to the Agency either during the notice-and-comment period or through a petition for reconsideration).

Here, Tri-State has not availed itself of the administrative options available to it. First, counsel for EPA has communicated with William Allison, Director of

the Air Pollution Control Division of the Colorado Department of Public Health and Environment. Mr. Allison stated that to his knowledge, Tri-State has not attempted to seek an extension of the September 1, 2015 deadline.

Nor has Tri-State approached EPA after the *Michigan* decision regarding its particular situation and the potential flexibilities available.[5] *See* 77 Fed. Reg. at 9411. Indeed, EPA's Enforcement Response Policy could potentially provide an opportunity for Tri-State to obtain more time than the company is seeking from this Court (one year from April 15, 2016 vs. the several months in which EPA intends to act on remand, as discussed below), provided Tri-State meets the Policy's criteria, which would include bringing the Nucla Station into compliance through the installation of controls or retirement within that year. *See* Ex. A. Absent exhaustion of its administrative options, Tri-State's request for emergency relief from this Court should be denied.[6]

---

[5] Tri-State did approach EPA to discuss options pursuant to the Enforcement Response Policy before the *Michigan* decision, but the company did not submit a formal request to the Agency.

[6] EPA is informed that Respondent-Intervenors California, Connecticut, Delaware, Illinois, Iowa, Maine, Maryland, Massachusetts, Minnesota, New Hampshire, New Mexico, New York, Oregon, Rhode Island, Vermont, the District of Columbia, the Cities of Baltimore, Chicago, and New York, and the County of Erie oppose Tri-State's Emergency Motion. At their request, EPA represents their position as follows: Tri-State's request for relief in the form of a suspension or further extension of time to satisfy its MATS compliance obligation until further proceedings consistent with the Supreme Court's decision in *Michigan v. EPA* have concluded must properly be directed in the first (footnote cont'd . . . .)

**II.    Tri-State Has Failed to Demonstrate the Four Factors Required for a Stay of the Rule.**

Contrary to Tri-State's contention that it has demonstrated the factors necessary for a stay or injunction by the Court, *see* Tri-State Motion 7, n.1, no such showing has been made.  A party seeking a stay of an administrative action must establish that (1) the party is likely to succeed on the merits, (2) the party will suffer irreparable harm in the absence of relief, (3) a stay will not injure other parties, and (4) an injunction is in the public interest.  *See Nken v. Holder*, 556 U.S. 418, 434 (2009); *see also* D.C. Circuit Rule 18(a)(1).  The first two factors "are most critical" in determining the need for a stay.  *Id.*

First, Tri-State confuses the "merits" at issue here by suggesting that the *Michigan* decision demonstrates its success.  Tri-State Motion 7, n.1.  The question at issue at this stage of the proceedings is not whether the Rule is or is not valid; the question is whether the Court will vacate the Rule during remand.  When this Court orders motions to govern remand proceedings, EPA intends to seek remand without vacatur to address the Supreme Court's limited holding in *Michigan v. EPA*.  In support of that motion, EPA intends to submit a declaration establishing the Agency's plan to complete the required consideration of costs for the

---

instance to either the Colorado permitting authority that issued the initial extension for the Nucla facility, and/or EPA.  It is these administrative agencies, not this Court, that are best positioned to address Tri-State's request.

"appropriate and necessary" finding by spring of next year. In fact, EPA's aim is to develop a schedule that will allow it to do so before the Nucla Station's April 15, 2016 compliance deadline.

The Supreme Court explicitly declined to limit the EPA's discretion as to how to consider costs, *see Michigan*, 135 S. Ct. at 2711, and the Agency has not yet determined how it will do so. However, the existing record for the Rule contains extensive documentation regarding the cost of compliance with the Rule. *See, e.g.*, Regulatory Impact Analysis for the Final Mercury and Air Toxics Standards, EPA-HQ-OAR-2009-0234-20131; *see also Michigan*, 135 S. Ct. at 2714-22 (Kagan, J., dissenting) (detailing EPA's exhaustive consideration of costs during later stages of the rulemaking process). The existence of those documents indicates that the Agency can meet an ambitious schedule on remand. Thus, although the question of whether the Court should remand the Rule without vacatur has not been fully briefed by the parties, given the limited nature of the Supreme Court's decision and EPA's commitment to an ambitious schedule on remand, in addition to the public health and welfare benefits of keeping the Rule in effect during remand (discussed below), Tri-State's likelihood of success on the merits is far from certain. *See Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993) (setting out the two factors relevant to remand without vacatur as "the seriousness of the order's deficiencies

(and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed"); *North Carolina v. EPA*, 550 F.3d 1176, 1178 (D.C. Cir. 2008) (noting this Court's practice of remand without vacatur particularly where vacatur would defeat the enhanced environmental protection provided by the rule).

Second, Tri-State does not in fact face imminent harm because it does not face a real choice on September 1, 2015. As an initial matter, the September 1, 2015 deadline is of Tri-State's own making, having proposed it to Colorado in its June 5, 2014, extension request. *See* Ex. E at 4 ("[W]e propose the following compliance schedule: Tri-State will select one of these compliance strategies no later than September 1, 2015."). As explained above, Tri-State has not sought flexibility from the State with respect to that deadline, or from EPA with respect to its ultimate compliance deadline of April 15, 2016. Additionally, Tri-State's own motion reveals that it does not truly face the dilemma it says it must face by September 1, 2015—the alleged choice between shutting down the Nucla Station or investing millions of dollars to meet the HCl emission limit by its April 2016 deadline. *See* Tri-State Motion 2, McInnes Decl. ¶¶ 16, 22. Tri-State concedes that "given Nucla's small size and the fact that it does not operate frequently, none of [the HCl control technologies] are economically justifiable." Tri-State Motion 6; *see also* McInnes Dec. ¶ 14. Thus, Tri-State appears to be asking this Court for

an additional extension of its compliance deadline to delay its retirement of the Nucla Station, not for emergency relief from an imminent decision that could potentially cost millions of dollars.[7]

Needless to say, in light of Tri-State's concession that controls are not economically justifiable, the alleged harm to Tri-State's customers of having to pay for any future installation of controls rings hollow.  Additionally, the potential retirement of one of Tri-State's many facilities, *see* McInnes Decl. ¶ 12, does not constitute irreparable harm under this Court's precedent.  *See Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("Recoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business.").  In any event, if EPA affirms its "appropriate and necessary" finding after a consideration of costs, a further extension of the life of the Nucla Station (which already operates infrequently) will only delay for a short time, not prevent, the alleged harms Tri-State contends will occur when the Nucla Station ceases operation.[8]

---

[7] To the extent Tri-State is asking for special treatment due to the Nucla Station's small size, *see* Tri-State Motion 2 (mentioned twice), 5, 6, that argument was already rejected by EPA in the context of the rulemaking.  *See* 77 Fed. Reg. at 9397-98 (responding to comments requesting subcategorization based on size and concluding that size "is totally unrelated to [a power plant's] ability to comply with final concentration-based limits").

[8] If EPA determines prior to the April 2016 deadline that regulation of power plants is not "appropriate and necessary" after a (footnote cont'd . . . .)

With respect to the third and fourth stay factors, granting Tri-State's request would injure EPA and other parties by eroding some of the protections of the Rule without giving EPA an opportunity to fully brief the issue of whether remand without vacatur is warranted. Indeed, keeping the Rule in full effect on remand is in the public interest because it will continue to require power plants to reduce emissions of hazardous air pollutants that have serious health and environmental consequences.

As EPA will explain in more detail in its motion to govern, compliance with the Rule, even in the short-term, will yield benefits to public health and welfare. *See, e.g., Michigan*, 135 S. Ct. at 2721 (listing notable health benefits); *see also* 77 Fed. Reg. at 9305-06 (summarizing health benefits of the Rule). Notably, Tri-State's motion does not assert that compliance with the HCl limit would not benefit public health and the environment. HCl and other acid gases emissions emitted by power plants are listed as hazardous air pollutants in CAA section 112(b) and add to already high atmospheric levels of other chronic respiratory toxicants and to environmental degradation due to acidification. *See* 76 Fed. Reg. 24,976, 25,016 (May 3, 2011); *see also* 77 Fed. Reg. at 9362. Power plants are major contributors to emissions of acid gases; for example, they emitted

---

consideration of costs, Nucla Station can simply continue to operate. Moreover, Tri-State has not alleged that it would not be able to resume operations if such a determination came after the April 2016 deadline. *See* Ex. B.

more than half of the nationwide HCl and hydrogen fluoride emissions in 2010. *See* 76 Fed. Reg. at 25,016. Many sensitive ecosystems are already experiencing acidification, *id.*, and recent evidence indicates that HCl can be transported long distances and aggravate acidification in locations distant from emissions sources. *See* 77 Fed. Reg. at 9362. Additionally, Tri-State suggests that only HCl emission reductions will be associated with compliance with the HCl limit, ignoring the fact that for coal-fired power plants, the Rule used HCl as a surrogate for all hazardous acid gases, including more potent acid gases such as hydrogen fluoride and hydrogen cyanide, *id.* at 9367; *see also* 76 Fed. Reg. at 25,004-05, and that due to the nature of the technologies necessary to comply with the HCl limit, emissions of other pollutants will be reduced, *see* 76 Fed. Reg. at 25,023. Thus, the Rule achieves important public health and welfare protections, and maintaining those protections during remand is in the public interest.[9]

---

[9] To the extent that Tri-State's discussion of the public health risks of HCl is an attempt to re-litigate EPA's regulation of that pollutant in the Rule, this Court already decided that issue, *see White Stallion*, 748 F.3d at 1244, and that issue is not before this Court on remand because it was not at issue in the Supreme Court's decision. *See generally Michigan*, 135 S. Ct. 2699. This Court must address only the Supreme Court's remand of the Rule for proceedings consistent with the decision. *See id.* at 2711.

## CONCLUSION

In summary, because Tri-State has failed to pursue administrative options available to it and has failed to establish significant harm in being required to comply with its current deadline for the infrequently-operated Nucla Station, and given that EPA intends to act quickly on remand and that the Rule achieves important public health and welfare protections, this Court should deny Tri-State's request for an additional extension of its compliance deadline under the Rule.[10]

DATED:  August 10, 2015                    Respectfully submitted,

                                          JOHN C. CRUDEN
                                          Assistant Attorney General
                                          Environment and Natural Resources
                                              Division

                                          /s/ Stephanie J. Talbert
                                          ERIC G. HOSTETLER
                                          STEPHANIE J. TALBERT
                                          United States Department of Justice
                                          Environment and Natural Resources
                                              Division
                                          Environmental Defense Section
                                          999 18th Street
                                          South Terrace, Suite 370
                                          Denver, CO 80202
                                          303-844-7231

---

[10] At the very least, this Court should put off deciding this motion until motions to govern future proceedings are fully briefed by all the parties, when all of the issues related to the Rule's status during remand will be fleshed out in more detail.  The attachments to this opposition alone demonstrate that Tri-State's request is factually complex and requires more factual development than Tri-State's eight-page declaration provides.

E-mail:    stephanie.talbert@usdoj.gov

*Counsel for Respondents*

OF COUNSEL
SONJA RODMAN
KAYTRUE TING
U.S. Environmental Protection
    Agency
1200 Pennsylvania Ave., N.W.
Washington, DC 20460


**CERTIFICATE OF SERVICE**

I hereby certify that I served a copy of RESPONDENT'S OPPOSITION TO THE MOTION OF TRI-STATE GENERATION AND TRANSMISSION ASSOCIATION INC. FOR SUSPENSION OF ITS COMPLIANCE OBLIGATION via Notice of Docket Activity by the Court's CM/ECF system, on August 10, 2015, on all counsel of record.

DATED:  August 10, 2015         JOHN C. CRUDEN
                                Assistant Attorney General
                                Environment and Natural Resources
                                Division

                                */s/ Stephanie J. Talbert*
                                ERIC G. HOSTETLER
                                STEPHANIE J. TALBERT
                                United States Department of Justice
                                Environment and Natural Resources
                                    Division
                                Environmental Defense Section
                                999 18th Street
                                South Terrace, Suite 370
                                Denver, CO 80202
                                303-844-7231
                                E-mail:    stephanie.talbert@usdoj.gov

                                *Counsel for Respondents*