ORAL ARGUMENT HELD DECEMBER 10, 2013
DECIDED APRIL 15, 2014

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| WHITE STALLION ENERGY CENTER, *et al.*, <br><br> Petitioners, <br><br> v. <br><br> ENVIRONMENTAL PROTECTION AGENCY, *et al.* <br><br> Respondents. | No. 12-1100 (and consolidated cases) |

**RESPONSE OF THE UTILITY AIR REGULATORY GROUP ("UARG")
TO FEDERAL RESPONDENT'S MOTION TO
<u>GOVERN FUTURE PROCEEDINGS</u>**

UARG files this response to the Federal Government's Motion to Govern Future Proceedings[1] to address the nature of the proceedings that the U.S. Environmental Protection Agency ("EPA" or "Agency") must undertake on remand of its unlawful appropriate and necessary determination. In its motion, EPA asserts that "there should be little doubt that the Agency chose correctly from the outset" regarding its decision to regulate electric generating units ("EGUs")

---

[1] Respondent's Motion to Govern Future Proceedings, No. 12-1100 (D.C. Cir. Sept. 24, 2015), Doc. 1574825 ("EPA Motion").

1

under Clean Air Act ("CAA" or "Act") § 112, 42 U.S.C. § 7412. EPA Motion at 12. EPA then suggests that it may solicit comment only on conclusions previously reached by the Agency. *Id.* at 10, 11-12. Nowhere does EPA say that it will conduct a rulemaking under CAA § 307(d), 42 U.S.C. § 7607(d), to address whether—and, if so, what—regulation of EGU hazardous air pollutant ("HAP") emissions under CAA §112 is "appropriate and necessary."

UARG members are directly regulated by the Mercury and Air Toxics Standards ("MATS") and have an interest in ensuring that any future regulation of EGU HAP emissions is consistent with the statute and the recent decision of the Supreme Court in *Michigan v. EPA*, 135 S. Ct. 2699 (2015). Regardless of whether the MATS rule is vacated or remanded without vacatur, EPA must conduct rulemaking under § 307(d) to address the numerous issues that must be resolved in response to the Supreme Court's decision.

1. In *Michigan*, the Supreme Court held that "EPA interpreted § 7412(n)(1)(A) unreasonably when it deemed cost irrelevant to the decision to regulate power plants." 135 S. Ct. at 2712. The Court said, "[t]he Agency must consider cost—including, most importantly, cost of compliance—*before* deciding whether regulation is appropriate and necessary." *Id*. at 2711 (emphasis added). On remand, the Agency will have to decide "within the limits of reasonable interpretation … how to account for cost," as well as whether costs, so determined,

support the conclusion that regulation under this section (i.e., under § 112) is "appropriate and necessary." *Id.* This proceeding will involve important legal, policy, and factual questions regarding the nature and scope of EPA's responsibility in making § 112(n)(1)(A) determinations.

2. Section 112 regulatory decisions, including those under § 112(n)(1)(A), are subject to notice-and-comment rulemaking under § 307(d). CAA § 307(d)(1)(C). Section 307(d) requires the Agency to publish a notice of proposed rulemaking accompanied by a statement of basis and purpose that summarizes the facts, methodologies, legal interpretations, and policy considerations on which the Agency relies; establish a rulemaking docket for such action that contains the data, information and documents that form the basis for the action; provide an opportunity for oral and written comment; and promulgate a final rule accompanied by a response to significant comments, a statement of basis and purpose, and an explanation of reasons for major changes. *Id.* § 307(d)(2)-(6).

3. The purpose of the notice-and-comment rulemaking process is to provide the public a meaningful opportunity to be heard and to ensure that "the agency maintains a flexible and open-minded attitude towards its own rules…." *See Nat'l Tour Brokers Ass'n v. United States*, 591 F.2d 896, 902 (D.C. Cir. 1978). These procedures are of particular importance here where the parties have *never* had an opportunity to comment on how the Agency thinks that costs should factor

into an "appropriate and necessary" finding under § 112(n)(1)(A) and the Agency appears to have prejudged the outcome of its remand proceeding. EPA Motion at 12 ("[T]here should be little doubt that the Agency chose correctly from the outset."). In its motion, EPA never mentions § 307(d) rulemaking. Instead, EPA promises an abbreviated proceeding in which its "proposed consideration of cost" would be completed "in the next few months" and the analysis then finalized "as close to April 15, 2016 as possible." Declaration of Janet G. McCabe, Acting Assistant Adm'r for the EPA Office of Air & Radiation ¶ 19 (Sept. 24, 2015), appended to EPA Motion. More is required.

    4. While EPA is correct that the holding of *Michigan* did not address the substance of EPA's prior cost assessments, EPA Motion at 10, that was because EPA did not rely on those assessments to support its § 112(n)(1)(A) determination. *Michigan*, 135 S. Ct. at 2705. In dicta, however, the Supreme Court expressed skepticism about EPA's considering only a narrow class of costs and excluding "harms that regulation might do to human health or the environment" from the assessment. *See id.* at 2707. Justices in the majority also questioned EPA's treatment of the purported "co-benefits" associated with incidental criteria pollutant reductions when criteria pollutants are "not covered" by the HAP program. *Id.* at 2706; Transcript of Oral Argument at 59-60, *Michigan v. EPA*, 135 S. Ct. 2699 (2015) (Nos. 14-46, 14-47, 14-49) (EPA's claimed co-benefits are "sort

4

of an end run around the restrictions" that limit regulation of criteria pollutants under the National Ambient Air Quality Standards program.); *id.* at 61, 62-63 (EPA's "bootstrapped" approach "raise[d] the red flag," particularly where "there's such a tiny proportion of benefit from the HAP program and such a disproportionate amount of benefit that would normally be addressed under the criteria … program."). A § 307(d) rulemaking is needed to ensure that these issues are fully and fairly considered on remand.

5. In that rulemaking, EPA also will need to assess the assumptions and facts that informed its prior cost analysis and make corrections as needed. For example, EPA projected in its prior cost analysis that the rule would contribute to the retirement of only 4.7 gigawatts of coal plant capacity—"much fewer" retirements than commenters projected. S*ee* 77 Fed. Reg. 9304, 9407 (Feb. 16, 2012). Since then, the U.S. Energy Information Administration confirmed that EPA's rejection of commenters' concerns was incorrect, as the MATS rule will contribute to the retirement by 2016 of an estimated 54 gigawatts of coal-fired electric generating capacity.[2] Under-projection of retirements in turn leads to

---

[2] U.S. Energy Information Administration, Today in Energy, AEO2014 Projects More Coal-Fired Power Plant Retirements by 2016 Than Have Been Scheduled (Feb. 14, 2014), *available at* http://www.eia.gov/todayinenergy/detail.cfm?id=15031.

5

under-projection of the costs of regulatory action, such as job losses.[3] This is only one of the many significant issues that the Agency will have to address on remand to fulfill its statutory obligations.[4]

6. Finally, in *Michigan*, the Supreme Court explained that "§ 7412(n)(1)(A) … directs the Agency to regulate power plants if it 'finds such regulation [i.e., regulation under § 112] is appropriate and necessary.'" 135 S. Ct. at 2706. In resolving this question, EPA will have to determine whether a program that imposes enormous costs to regulate substances that pose no public health risk can be an "appropriate and necessary" response to the regulatory objective of § 112(n)(1)(A), i.e., regulation of "hazards to public health reasonably anticipated to occur as a result of [EGU] emissions." Making this new threshold decision on EGU HAP regulation will also require EPA to engage whether its earlier *Chevron*

---

[3] *Cf.* EPA, Regulatory Impact Analysis for the Final MATS Rule at 6A-8 (Dec. 2011), EPA-HQ-OAR-2009-0234-20131 (projecting annual job losses due to coal capacity retirements).

[4] For example, UARG also demonstrated in a petition for reconsideration that EPA relied on contaminated arsenic and chromium stack samples to claim a health risk. UARG Petition for Reconsideration of MATS Rule at 6-7 (Apr. 16, 2012), EPA-HQ-OAR-2009-0234-20179. This Court did not address the data submitted with UARG's reconsideration petition because those data were not part of the administrative record on review in *White Stallion Energy Center v. EPA*, 748 F.3d 1222, 1249 (D.C. Cir. 2014) (per curiam). EPA subsequently denied UARG's petition and that denial has been challenged by UARG. *See* UARG Nonbinding Statement of Issues, *UARG v. EPA*, No. 15-1191, consolidated under lead No. 15-1180 (D.C. Cir. July 31, 2015), Doc. 1565541. That litigation is being held in abeyance pending disposition of proceedings on remand in this litigation. Order, *ARIPPA v. EPA*, No. 15-1180 (D.C. Cir. Aug. 19, 2015), Doc. 1568598.

Step 2 interpretations governing the nature of its § 112 authority to regulate EGU HAPs must be reconsidered in light of a threshold standard that is not cost-blind. *See, e.g., White Stallion Energy Ctr.*, 748 F.3d at 1243 ("*Regulation under § 112(d)*"). In other words, EPA's remand proceedings cannot be limited to an abbreviated review of prior cost-related conclusions; EPA must undertake rulemaking that explores every aspect of EPA's § 112 authority to regulate EGUs under § 112(n)(1)(A) as construed by the Supreme Court.

For these reasons, without regard to whether the MATS rule is remanded with, or without, vacatur, UARG respectfully requests that the Court declare that EPA must undertake § 307(d) notice-and-comment rulemaking on remand to determine whether, in light of the costs of regulation, regulation of EGU HAP emissions "under this section … is appropriate and necessary."

                                     Respectfully submitted,

                                     /s/ F. William Brownell
                                     F. William Brownell
                                     Elizabeth L. Horner
                                     HUNTON & WILLIAMS LLP
                                     2200 Pennsylvania Avenue, N.W.
                                     Washington, D.C. 20037
                                     (202) 955-1500
                                     bbrownell@hunton.com
                                     ehorner@hunton.com

                                     *Counsel for the Utility Air Regulatory Group*

Dated: October 21, 2015

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of October 2015, the foregoing Response of the Utility Air Regulatory Group to Federal Respondent's Motion to Govern Future Proceedings was served electronically through the Court's CM/ECF system on all registered counsel in No. 12-1100 (and consolidated cases).

*/s/ F. William Brownell*
F. William Brownell